UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

YORI HENRY FAIRLEY                              CIVIL ACTION

VERSUS                                         NO: 20-1097

VINCENT A. CULOTTA, JR., M.D.                  SECTION: "A" (3)

## ORDER AND REASONS

The following motion is before the Court: **Motion to Dismiss (Rec. Doc. 20)** filed by the defendant, Vincent A. Culotta, Jr. The plaintiff, Yori Henry Fairley, opposes the motion. The motion, submitted for consideration on September 30, 2020, is before the Court on the briefs without oral argument.

### I.      Background

This action is the third civil action that the plaintiff, Ms. Yori Fairley, has filed in this district in connection with the death of her two-year old son, Dion Henry, in 2005. On September 20, 2005, Ms. Fairley arrived at the Ochsner Hospital with her two year old son and shortly thereafter he died. (Rec. Doc. 1-4 at 2). Ms. Fairley believes that her son's death resulted from a lethal combination of drugs administered by the treating physicians at Ochsner. Ms. Fairley is convinced that the Ochsner physicians intentionally killed her child in order to harvest his organs and then attempted to cover up the murder by lying about the events leading up to his death.

Ms. Fairley has persevered over the years in pursuing her theory that her child was murdered. As part of her efforts, in 2005/2006 she filed a complaint against the

treating physicians with the State Board of Medical Examiners. In July 2006, that body communicated to Ms. Fairley that it had found no impropriety with the treatment rendered at Ochsner. In prior litigation, Ms. Fairley sued the then Executive Director of the Louisiana State Board of Medical Examiners questioning the efficacy of the investigation that had occurred in response to her complaint. That litigation did not terminate favorably to Ms. Fairley.[1]

Ms. Fairley filed the instant complaint on March 25, 2020, against the current Executive Director of the Louisiana State Board of Medical Examiners ("the Board"), Dr. Vincent Culotta, Jr. Plaintiff is not represented by counsel. It is the Court's understanding that this action derives from Ms. Fairley's attempt in 2019 to obtain the records of the Board's 2005/2006 investigation of her complaint against the Ochsner physicians. (Rec. Doc. 1-4, Exhibit 2). Ms. Fairley has sued Dr. Culotta pursuant to 42 U.S.C. § 1983 contending that he has conspired with the Ochsner defendants to cover up a scheme to kill black children in order to harvest their organs. Dr. Culotta has been sued in both his official and individual capacities. Plaintiff is not seeking monetary relief from Dr. Culotta. (Rec. Doc. 1, Complaint at 14). Although she does not expressly say

---

[1] Plaintiff initiated EDLA Civil Action 06-6046 in state court against the Ochsner Clinic Foundation and both of the Ochsner physicians that treated her son prior to his death. Plaintiff was not represented by counsel. Judge Lemmon determined sua sponte that the case had been removed improperly and she remanded it to state court.

While that matter was still pending in this district, Plaintiff filed another action in the Eastern District of Louisiana, EDLA Civil Action 06-6064. Plaintiff was not represented by counsel. The defendants in that matter were all officials of the State of Louisiana, including the then Executive Director of the Louisiana State Board of Medical Examiners. Judge Barbier dismissed all claims as either being barred by the Eleventh Amendment or otherwise legally defective. That ruling was affirmed on appeal. *Fairley v. State of Louisiana*, 254 Fed. Appx. 275 (5th Cir. 2007) (unpublished).

so in her prayer for relief, the Court assumes that the specific relief Ms. Fairley hopes to obtain is an order compelling Dr. Culotta to produce the investigative file pertaining to the treatment of her son.[2]

Prior to service on the defendant, the plaintiff filed several motions, which the Court reviewed and construed as an attempt to have the defendant charged with federal criminal violations. The Court denied those motions because this is a civil case and this Court does not serve in a prosecutorial role. (Rec. Doc. 7, Order 5/4/20).

The defendant now moves to dismiss the complaint in its entirety.

## II.   Discussion

### Governing Standards

In the context of a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 555 (2007)).

---

[2] In her opposition the plaintiff likewise declines to specifically identify the relief that she seeks in this lawsuit instead couching the relief sought in broad, general terms such as truth and justice. She does state expressly, however, that she is seeking injunctive relief. (Rec. Doc. 21, Opposition at 2). The Court therefore assumes that the specific relief sought is coercive injunctive relief to force Dr. Culotta to produce the Board's investigative materials related to her 2005-2006 complaint against the Ochsner physicians that treated her son.

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5ᵗʰ Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5ᵗʰ Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).

A motion filed pursuant to Rule 12(b)(1) raises the defense of lack of subject matter jurisdiction. Fed. R. Civ Pro. 12(b)(1). The defense of state sovereign immunity pursuant to the Eleventh Amendment is properly raised pursuant to Rule 12(b)(1). *See Warnock v. Pecos County*, 88 F.3d 341, 343 (5ᵗʰ Cir. 1996). Except where waived, the Eleventh Amendment to the United States Constitution bars suits in federal court by citizens of a state against the state or its agencies. *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185 (5th Cir. 1986) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89 (1984)); U.S. Const. Amend. XI. Section 1983 does not override or waive the Eleventh Amendment bar. *Id.* (citing *Quern v. Jordan*, 440 U.S. 332 (1979)). Moreover, the well-settled law is that the states are not "persons" under § 1983. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).

To state a § 1983 claim the plaintiff must allege a violation of a right secured by the Constitution or laws of the United States and demonstrate that the alleged deprivation was committed by a person acting under color of state law. *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (citing *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)). The plaintiff may bring claims against an official in his personal or official capacities or both capacities for the same allegedly wrongful conduct. The difference between personal and official capacity claims pertains to who gets cast in judgment for any damages awarded, the legal standards that govern liability, and whether certain immunity defenses are available.

Personal capacity suits seek to impose personal liability upon a governmental official for actions that he takes under color of state law. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). An award of damages against an official in his personal capacity can be executed only against the official's personal assets. *Id.* To establish personal liability in a § 1983 action it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *Id.* (citing *Monroe v. Pape*, 365 U.S. 167 (1961)).

To prevail in an official capacity action, however, it is not enough to show that a governmental official, acting under color of state law, caused the deprivation of a federal right because for a governmental entity to be liable under § 1983 for that violation the entity itself must be a "moving force" behind the deprivation. *Id.* (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)). Thus, in an official capacity suit the entity's policy or custom must have played a part in the violation of federal law—in other words execution

of the entity's official policy must have inflicted the right-depriving injury. *Id.* & n.12 (citing quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). The doctrine of respondeat superior plays no role in holding the government liable under § 1983.

Official capacity suits "generally represent only another way of pleading an action against an entity of which the official is an agent." *Graham*, 473 U.S. at 165 (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Id.* (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)). A plaintiff seeking to recover on a damages judgment in an official capacity suit must look to the governmental entity itself. *Id.*

### *Analysis*

Ms. Fairley has always believed that the treating physicians at Ochsner murdered her son in 2005, and that the Board *as constituted in 2005-2006* conspired with Ochsner by falsifying its investigation into the child's death. On July 17, 2006, the Board notified Ms. Fairley that her complaint against the Ochsner physicians had been fully investigated but that the Board did not find that their actions violated the Louisiana Medical Malpractice Act. (Rec. Docs. 1-8 & 1-9). In March 2019, Ms. Fairley requested the investigative file pertaining to her son's death; the impetus for the civil action *sub judice* that Ms. Fairley filed earlier this year was the Board's denial of her request. In his capacity as Executive Director of the Board, Dr. Culotta signed the March 28, 2019

letter that communicated the Board's formal denial of the plaintiff's request.[3]  (Rec .Doc.

1-5, Exhibit 3). Although Plaintiff concedes that the alleged conspiracy between

Ochsner and the Board predates Dr. Culotta's tenure as Executive Director, (Rec. Doc.

1, Complaint ¶ 11), Plaintiff's theory is that Dr. Culotta, being aware of what occurred in

2005 and 2006, has joined the conspiracy and that he has used his position as

Executive Director to fraudulently conceal evidence (the investigative file) in order to

intentionally deny her justice. (*Id.* ¶ C(2)). Plaintiff contends that by doing so Dr. Culotta

has interfered with her due process and equal protection rights and that he has done so

because she is black. (*Id.* ¶ 5).

Plaintiff's official capacity and personal capacity claims fail for the same reason—

she does not allege facts sufficient to support a violation of a right secured by the

Constitution or laws of the United States.[4]  Federal law does not give Plaintiff the right to

---

[3]  The Court has no way of knowing whether Plaintiff pursued legal action under the Louisiana public records law in state court in order to obtain the investigative records. Given that the plaintiff objected (in her correspondence with the Board) to the Board's characterization of her request as a public records request, the Court doubts that Plaintiff pursued any remedies under state law. Of course the success of an appeal in state court of the denial of the request would have likely been unsuccessful. The Board's denial letter to the plaintiff provides a detailed and thorough explanation of why state law protects from production the records Plaintiff is seeking. Plaintiff has not suggested that the Board's denial of her request was not carried out in compliance with state law.

[4]  The defendant has taken the position that the Eleventh Amendment bars the claims against Dr. Culotta in his official capacity. Clearly, this would be true if Plaintiff was seeking damages. But she seeks only injunctive relief under the auspices of *Ex Parte Young*, 209 U.S. 123 (1908). Pursuant to the *Ex Parte Young* exception, the Eleventh Amendment is not a bar to suits for prospective relief against a state employee acting in his official capacity. *Nelson v. Unv. Of Tex.*, 535 F.3d 318, 321 (5th Cir. 2008) (citing *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008)). The Court is persuaded that if refusing to produce the Board's investigative file to the plaintiff was and is a violation of federal law, which it was not and is not, then a coercive injunction against Dr. Culotta in his official capacity ordering him to produce the file would fall under the *Ex Parte Young* exception. Thus, the problem with the official capacity claims lies not with the Eleventh Amendment but rather with the same deficit that plagues the personal

have the Board's investigative file. Although her desire to obtain the file is certainly understandable, state law confers no protectable property interest in the file so as to support a federal due process claim. And as for an equal protection violation, Plaintiff fails to allege how she was intentionally treated differently from other similarly situated citizens who requested confidential investigatory files.

In short, the complaint fails to state any claim upon which relief can be granted as to Dr. Culotta.[5]

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 20)** filed by the defendant, Vincent A. Culotta, Jr. is **GRANTED**. The complaint filed by Yori Henry Fairley is **DISMISSED WITH PREJUDICE**.

October 8, 2020

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

capacity claims: Dr. Culotta's action on behalf of the Board did not violate any federal right.

[5] The complaint references numerous federal criminal statutes, as well as 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986. These claims are legally frivolous insofar as Dr. Culotta is concerned because the sole allegedly wrongful act that he engaged in was signing a letter in his capacity as executive director informing the plaintiff of the Board's denial of her document request. Most of the facts alleged in the complaint pertain to what occurred in 2005 and 2006 and none of those facts involved Dr. Culotta, whose sole act occurred in 2019. The accusation that in 2019 Dr. Culotta conspired with the actors involved in the 2005 and 2006 events is facially implausible in light of the lack of factual support for this assertion.